Joseph Ross **MEIER**, Appellant,

v.

**STATE** of Iowa, Appellee.

No. 68795.

Supreme Court of Iowa.

Aug. 17, 1983.

James Cleary, Des Moines, for appellant.

Thomas J. Miller, Atty. Gen., Roxann M. Ryan, Asst. Atty. Gen., and Dan L. Johnston, County Atty., for appellee.

REYNOLDSON, Chief Justice.

Petitioner Joseph Ross Meier appeals from the denial of his application seeking postconviction relief from his 1980 conviction on a charge of first-degree robbery. He contends his district court counsel was ineffective in misinforming him concerning the consequences of his guilty plea, and that the sentence and plea should therefore be set aside. We reverse and remand with directions.

The trial information charged that defendant

did aid and abet in the commission of robbery in the first degree ... while armed with a dangerous weapon, and ... represented that [he was] in the immediate possession and control of a firearm. . . .

At postconviction hearing petitioner testified that his trial counsel, in relating plea bargain negotiations, told him that if he stood trial and was convicted he "would be given a 25-year sentence with mandatory five years," and that if he pled guilty he "could get 25 without the mandatory." Petitioner testified he understood that if he accepted the bargain he could be released in less than five years, if not and he was convicted, he would be in prison at least five years before he "would be eligible for any kind of release." Under these conditions he waived trial and pled guilty. After he went to the institution at Anamosa, he learned that "five-year mandatory means two years ten months."

Petitioner's trial counsel was called as a witness in the postconviction hearing. He testified, "I am sure that I told Mr. Meier that if we stood trial and ... that sentencing provision were invoked, that he would serve five years and be eligible for parole at the expiration of five years."

The postconviction court found as a fact that defendant's trial counsel did misadvise defendant on the law. Nonetheless, the court further found "Petitioner got what he bargained for; that is, a 25-year sentence without a mandatory minimum sentence." The court concluded the record did not dem-

onstrate the attorney "was so mistaken or careless in his advice to Petitioner to amount to ineffective assistance of counsel."

I. The "mandatory five-year term" referred to by the parties is provided in Iowa Code section 902.7 (1979):

Minimum sentence—use of a firearm. At the trial of a person charged with participating in a forcible felony, if the trier of fact finds beyond a reasonable doubt that the person is *guilty of a forcible felony and* that *the person represented that he* or she *was in the immediate possession and control of a firearm,* displayed a firearm in a threatening manner, or was armed with a firearm while participating in the forcible felony *the convicted person shall serve a minimum of five years* of the sentence imposed by law. A person sentenced pursuant to this section shall not be eligible for parole until he or she has served the minimum sentence of confinement imposed by this section.

(Emphasis added.) When enacted as part of the criminal code revision, this section was novel. *See* 1976 Iowa Acts ch. 1245(3), § 207; 4 J. Yeager and R. Carlson, Iowa Practice § 1624 (1979). *See generally* Dunahoo, *The New Iowa Criminal Code* (pt. 2), 29 Drake L.Rev. 491, 567–68 (1980). It became effective January 1, 1978, 1976 Iowa Acts ch. 1245(4), § 529.

Another code provision, however, limits the thrust of section 902.7. Iowa Code section 246.38 (1977) provided:

Time to be served—credit. No convict shall be discharged from the penitentiary . . . until he has served the full term for which he was sentenced, *less good time earned* and not forfeited . . . .

(Emphasis added.) In 1978, a new provision was added to section 246.38:

Any provision to the contrary notwithstanding, *good time* earned and not forfeited *shall apply to reduce a mandatory minimum sentence being served pursuant to section* . . . *902.7* . . . .

1978 Iowa Acts ch. 1091, § 1 (emphasis added). Section 3 of the same act made a

similar change in the honor time statute, section 246.43. These new provisions were effective retroactive to January 1, 1978. 1978 Iowa Acts ch. 1091, § 5.

After these amendments to sections 246.-38 and 246.43, the attorney general issued an opinion that "good and honor time shall be applied to reduce both the maximum and minimum sentence expiration dates." 1978 Iowa Att'y Gen. Biennial Rep. 704, 705.

Thus in 1978 and thereafter, it was clear that a felon committed to a section 902.7 mandatory five-year sentence was not compelled to undergo incarceration for five calendar years. Allowances for honor and good time permitted under sections 246.38 and 246.43 could have reduced the mandatory five-year sentence to a substantially lesser interval.

■ II. The test we apply to a claim of ineffective counsel "is whether under the entire record and totality of the circumstances counsel's performance was within the range of normal competency." *Snethen v. State,* 308 N.W.2d 11, 14 (Iowa 1981). When the claim is grounded on counsel's failure to take some action, the claimant must demonstrate (1) counsel failed to perform an essential duty, and (2) prejudice resulted. *State v. Hrbek,* 336 N.W.2d 431, 436 (Iowa 1983); *Henderson v. Scurr,* 313 N.W.2d 522, 524 (Iowa 1981). Claimant must satisfy this burden by a preponderance of the evidence, *Kellogg v. State,* 288 N.W.2d 561, 563 (Iowa 1980), and rebut the presumption of counsel's competence. *Fryer v. State,* 325 N.W.2d 400, 412 (Iowa 1982).

In the case before us it is undisputed that trial counsel gave petitioner erroneous advice regarding the law on the time he would be required to serve under the "mandatory five-year term," and that petitioner relied on this advice in waiving trial and pleading guilty. This claim of ineffective assistance does not involve trial tactics, strategies, or other judgment calls that we do not ordinarily second-guess. *See Sallis v. Rhoads,* 325 N.W.2d 121, 123 (Iowa 1982). Rather, it concerns counsel's legal misadvice resulting

from his unfamiliarity with and failure to research applicable statutory provisions that in various plea alternatives would determine the length of his client's incarceration.

■ We find the following language from *State v. Schoelerman,* 315 N.W.2d 67, 71–72 (Iowa 1982), is applicable here:

It may be that trial counsel did not raise that [mischarging] issue because he was unaware of the ... statute .... If that was the case, we believe trial counsel's lack of knowledge or preparation would place him below the "range of normal competency" in his representation of defendant. A normally competent attorney who undertakes to represent a criminal defendant should either be familiar with the basic provisions of the criminal code, or should make an effort to acquaint himself with those provisions which may be applicable to the criminal acts allegedly committed by his client.

Faced with records of erroneous pre-plea advice concerning parole and other release guidelines, the federal circuit courts generally have determined there was ineffective assistance of counsel. *See Hawkman v. Parratt,* 661 F.2d 1161 (8th Cir.1981); *Strader v. Garrison,* 611 F.2d 61 (4th Cir. 1979). In *Hawkman,* 661 F.2d at 1170, the court wrote:

A guilty plea must represent the informed, self-determined choice of the defendant among practicable alternatives; a guilty plea cannot be a conscious, informed choice if the accused relies upon counsel who performs ineffectively in advising him regarding the consequences of entering a guilty plea and of the feasible options.

■ The State also refers to the *Strader* case, along with other federal and Iowa decisions standing in part for the proposition that the defendant need not be informed of all indirect and collateral consequences of his plea. While there is no constitutional requirement that a judge provide advice relating to parole or the possibility of sentence deferral, *see Hunter v. Fogg,* 616 F.2d 55, 61 (2d Cir.1980);

*Grout v. State,* 320 N.W.2d 619, 620–21 (Iowa 1982); *State v. Woolsey,* 240 N.W.2d 651, 653–54 (Iowa 1976), that does not leave a court, or an attorney, free to misinform a defendant regarding collateral consequences of his plea. In *State v. Boone,* 298 N.W.2d 335 (Iowa 1980), this court reversed a district court's denial of defendant's motion in arrest of judgment because the judge taking defendant's guilty plea incorrectly indicated the possibility of a deferred sentence. Under those circumstances, this court was unable to "believe that the plea was knowingly and intelligently entered." *Id.* at 338. Misstatements by defense counsel, once given, can similarly destroy a defendant's opportunity to make a knowing and intelligent choice, see *Strader,* 611 F.2d at 65; *United States ex rel. Hill v. Ternullo,* 510 F.2d 844, 847 (2d Cir.1975). In *Strader,* the court wrote:

One would not suppose that the collateral consequence rule [under which information regarding parole eligibility is not initially required] ... would apply in a situation in which defendant's guilty plea was induced by actual misadvice respecting some collateral consequence when that consequence was of substantial importance to the defendant.

611 F.2d at 63. The importance of the "five-year mandatory" to the defendant, petitioner herein, is obvious from the transcript of the proceedings below:

Q. Did the two choices ... influence you in making a decision as to whether to plead guilty? A. Yes, definitely .... I went for the plea bargain to get out from under that five years.

This case is, thus, distinguished from *State v. Haer,* 20 Wash.App. 306, 578 P.2d 1339 (1978), wherein the court found the false information relayed to defendant not a "significant portion of the things that were on the defendant's mind ...." *Id.* at 309, 578 P.2d at 1341. Similarly, in *Cerame v. State,* 584 S.W.2d 174 (Mo.App.1979), defendant was so unconcerned with counsel's failure to advise that he neglected to include the matter in his "detailed" pro se complaint. *Id.* at 178.

The State, however, seems to adopt trial court's rationale that petitioner received the sentence he bargained for, and thus, there was no prejudice.[1] Although the issue is unusual and close, the prejudice results not from what petitioner *received,* but from what he *relinquished.* He had an unqualified constitutional right to a trial on the issue of his guilt, which he abandoned on the strength of his lawyer's erroneous legal advice. We will not speculate on the outcome of the trial waived by his guilty plea. The due process deprivation occurred when he was "unable to make an intelligent and informed choice from among his alternative courses of action" at the plea hearing. *Rinehart v. Brewer,* 561 F.2d 126, 132 (8th Cir.1977).

We reverse the judgment of the postconviction court and remand for entry of judgment vacating the guilty plea, conviction and judgment in petitioner's criminal case, and permitting petitioner to plead anew in that proceeding.

**REVERSED AND REMANDED WITH DIRECTIONS.**

All Justices concur except SCHULTZ, HARRIS, and CARTER, JJ., who dissent.

SCHULTZ, Justice (dissenting).

Contrary to the majority, I do not believe Meier was substantially prejudiced by his attorney's misadvice. Assuming without deciding that misadvice as to collateral consequences of a plea is ineffective assistance of counsel, the law also requires a defendant to show prejudice in order to set his plea aside. *State v. Hrbek,* 336 N.W.2d 431, 436 (Iowa 1983); *Henderson v. Scurr,* 313 N.W.2d 522, 524 (Iowa 1981). The petitioner in the present case, unlike the defendant in *Strader,* was not given any false hope of an earlier release from prison. *See also, State v. Boone,* 298 N.W.2d 335, 338 (Iowa

1980) (incorrect statements by the court prior to defendant's guilty plea falsely gave defendant hope that he might be eligible for probation or a deferred sentence). His only complaint is that he might not have pled guilty to the lessor charge in order to avoid the minimum sentence if he had been told the minimum sentence could possibly be reduced by good time. While the contingency of possible good time reduction, in retrospect, may have lessened somewhat the value of the bargain he struck, clearly it did not make the petitioner worse off than he otherwise would have been without the bargain. There is not even a hint of evidence that petitioner could have obtained a better result. His attorney, an experienced trial lawyer who has handled over 1000 felony cases and 100 trials, testified that petitioner had no chance to prevail in a jury trial on the issue of culpability and that the best deal was to take the plea bargain.

From my own evaluation of the totality of the circumstances presented here, I find it doubtful that petitioner's trial counsel's performance was below the range of normal competency. *See, i.e., Cerame v. State,* 584 S.W.2d 174, 177–78 (Mo.App.1978) (defense counsel's ignorance of statute providing for special parole term of additional five years for drug offenders and his failure to so inform defendant prior to guilty plea did not amount to ineffective assistance of counsel); *State v. Haer,* 20 Wash.App. 306, 309–10, 578 P.2d 1339, 1341 (1978) (erroneous pre-plea advice by counsel that defendant would be subject to enhanced penalty provision on each of the four counts he faced and thus be required to serve four minimum terms did not constitute ineffective assistance of counsel even though defendant only could be subjected to one minimum mandatory term). Even if petitioner did receive ineffective assistance of counsel,

---

1. The facts in this case distinguish it from *State v. Tobin,* 333 N.W.2d 842, 844 (Iowa 1983), where we affirmed a conviction on the ground defendant received what he "bargained for" in exchange for his guilty plea. There the guilty plea was premised on defendant's right to raise a double jeopardy claim on appeal. We held ineffective assistance of counsel caused the is-

sue not to be presented for ruling in the trial court, and accordingly addressed and decided (adversely to defendant) the double jeopardy issue. Defendant did not contend he relinquished any right in exchange for his plea: He simply asserted he was not receiving what he had been promised, a contention resolved by our consideration of the issue.

he has not shown that prejudice resulted therefrom. Accordingly, I would affirm the district court's denial of postconviction relief.

HARRIS and CARTER, JJ., join this dissent.